BENJAMIN IRISH v. CLAYES & MORSE.

A mortgagor conveys absolutely to the mortgagee, in payment of the mortgage; if such conveyance be avoided by the creditors of the mortgagor, as fraudulent, it leaves the mortgage in force, as to such creditors.

THIS was an action of ejectment, to recover the seizin and possession of certain lands in Charlotte.

Plea—Not guilty.   Issue to the country.

On the trial of the issue in the County Court, the plaintiff offered, as evidence of title to the lands in question, the record of a judgment in his favor, and against one Elwood Irish, rendered by Chittenden County Court, at their March Term 1834, and a writ of execution, which issued thereon, dated March 26, 1834, and a levy of said execution on the same lands described in the plaintiff's declaration, which levy was recorded in the town clerk's office, in Charlotte, on the 25th day of May, 1834.

The defendants offered, in evidence, a mortgage deed of the same lands, from the said Elwood Irish to the defendant Clayes, dated Oct. 25, 1833, conditioned for the payment of a note of that date, given by said Elwood to said Clayes, for $2,200. They also, offered to prove, that said note, among other notes, was, on the 30th of Oct. 1833, given up to said Elwood, as a consideration for a deed of that date, executed by the said Elwood to these defendants, of the lands in question, and other lands, and that said note had not been paid nor satisfied, except by said deed.

The plaintiff admitted the facts, thus offered to be proved by the defendants, and, on his part, offered to prove that the

CHITTENDEN, deed, dated Oct. 30, 1833, from Elwood Irish to these defendants, was fraudulent and void.    To this evidence the defendants objected, and the Court rejected it.    The jury, under the direction of the Court, returned a verdict for the defendants ; to which decision and direction of said Court, the plaintiff excepted.

January, 1838.

Irish
v.
Clayes &
Morse.

*C. Adams*, for plaintiff.

The defendants had no legal interest in the land.

For the purposes of this trial, it must be taken for granted, that the deed of 30th Oct. 1833 was fraudulent and void, and, therefore, could not be set up against the claim of the plaintiff.

The defendants' right to the land must then rest entirely upon the mortgage deed of the 25th Oct. 1833, and, unless that can be sustained, the title fails.    In order to sustain the mortgage, the note of $2,200 must be a subsisting claim, not only as between the original parties, but as against the creditors of Elwood Irish.    The question then turns on the effect of giving up that note to Elwood Irish, and taking the deed of October, 30.

The most favorable view, for the defendants, is to consider that transaction a fair one.    If fair, it would seem very clear that the note was a good consideration for the deed, that the title passed by the deed, and that the defendants could hold the land, in opposition to any claim that Elwood Irish, or any other person, could make.    The consequence, then, most clearly is, that if the note could be recovered of Elwood, the defendants would have the benefit of the note and land too.

This view of the subject shows conclusively that no claim can be sustained upon the note against Elwood Irish.

It is a well settled rule, that the taking of a note, as *payment* for a precedent debt, discharges the debt ; but a difference of opinion has prevailed, as to the legal presumption arising from the reception of such note.    In New York, the legal presumption is, that the note is not received as payment, and consequently it must appear, by proof, that the parties so agreed.    But in this state, the more rational doctrine has prevailed, that the taking of a note, is presumptive evidence of payment, and will be so considered, unless the contrary is proved.    *Hutchins* v. *Olcott*, 4 Vt. R. 549.

If this be the legal presumption, in the case of a note re- Chittenden, received *as payment*, how much¯ more strong is it in the case $\phantom{xx}$1838.¯ of a deed. In cases where the parties pursue their original claim, the note is brought into Court, and cancelled, and all probability of claim against the maker is thereby avoided. But not so in the case of a deed. If the deed was brought into Court and cancelled, it would avail nothing, as the title may have been passed by the grantee, or attached by his creditors, and the Court could not compel parties to rely on a re-grant, or search the records during trial.

If Clayes should prosecute Elwood Irish, on the note, he would be compelled to produce it or account for its absence, and the moment it appeared that he had surrendered the note and taken a deed of the land, there would be an¯end of his claim on the note.

The claim of Clayes against Elwood Irish, on the note, is not strengthened by considering the deed of Oct. 30, as fraudulent. It is settled law that the parties cannot impeach their own conveyance on the ground of fraud. *Martin* v. *Martin*, 1 Vt. R. 91. *Peaslee* v. *Barney*, D. Chip. 331.

It is hardly necessary to say, that if, as between the parties, no recovery could be had on the note; the defendants cannot succeed against the creditors of Elwood Irish. It is equally clear that if the note falls, the mortgage must fall with it.

*Lyman & Marsh*, and *Maeck & Smalley*, for defendants.

The exceptions do not state the nature of the evidence by which the plaintiff offered to show the purchase of the equity of redemption to be fraudulent and void, and it does not, therefore, appear whether it was void, because made in fraud of the rights of creditors, or by reason of frauds between the grantor and grantee. If it were the latter case, the grantor can only take advantage of the fraud, and the validity of the conveyance cannot be impeached in this action. If the former, the action can only be sustained upon the ground that the surrender of the note, upon the execution of the fraudulent deed, without other payment, operates as a satisfaction of the note, and a discharge of the mortgage. The mortgage and note are admitted to have been *bona fide* and valid. They cannot be impeached by any matter, *ex post facto*. *Wilder* v. *Winne*, 6 Cow. R. 284.

Irisn
v.
Clayes &
Morse.

CHITTENDEN,
January,
1838.

Irish
v.
Clayes &
Morse.

The note neither creates, nor constitutes the debt, and is but evidence, and no case has been found where the surrender of the evidence, without valuable consideration, has been holden to discharge the debt. Even the exchange of it for a new security, though the latter may be void for usury or other cause, will not operate as a satisfaction. *Stebbins* v. *Smith,* 4 Pick. R. 97. *Gray* v. *Fowler,* 1 H. Bl. 462.

The mortgage is an incident of, and security for, the debt, rather than the evidence of it, and the doctrine of all the cases is, that nothing but a payment or release will defeat it. *Davis* v. *Maynard,* 9 Mass. R. 242. *Cary* v. *Prentiss,* 7 Mass. R. 63. *Perkins* v. *Pitts,* 11 Mass. R. 125. *Dana & Hayden* v. *Binney & Morrison,* 7 Vt. R. 493.

The old doctrine of the merger of the legal and equitable estates, upon the purchase of the equity of redemption by the mortgagee, appears to be exploded. It is at the election of the mortgagee, whether he will consider the mortgage avoided or not, and, in default of evidence of election, the law presumes him to have elected that which is most beneficial to him. *Marshall* v. *Wood,* 5 Vt. R. 250.

But the question seems to have been expressly decided in *Hoyt* v. *Dimon,* 5 Day's R. 479. and it is said that a similar doctrine was held by this Court in a case in Rutland county not yet reported.

The opinion of the Court was delivered by

COLLAMER, J—The plaintiff claims title as the levying creditor of Elwood Irish, the former owner of the land. It appears the defendants had a deed from Elwood Irish, including this, with other lands, delivered previous to the plaintiff's levy. This deed, the plaintiff insists, was fraudulent and void. One of the defendants held a mortgage deed of the same land, of a still previous date, but the notes, for which that mortgage was given, were given up, in part, for the consideration of the deed, now said to be fraudulent. If this last deed was fraudulent, merely as to Elwood Irish, then the plaintiff cannot avoid it, and therefore, cannot recover. If this last deed was fraudulent and void as against the creditors of Elwood Irish, as has been argued, then it presents this question; can the creditors of Elwood Irish, attach and hold on his debts, not only all, which he fraudulently conveyed, but hold it, relieved of the incum-

brances previously, *bona fide*, created and then still existing upon it, in favor of the same grantee, who-received the fraudulent conveyance.

Contracts are frequently called *void*, which are only *voidable*. An infant's deed is called *void*, but it is only so when he shall have avoided it. A contract, in which one of the parties is defrauded, is said to be *void as to him*, but it is only so when *he* has avoided it. A usurious contract is called *void*; but it is only so, when it is *avoided* by the party, on whom the usury is practised. The general rule of law is the same in all such cases, that is, where the contract is avoided, the parties are restored to their previously existing rights. They are in " *status ante bellum*," and not in " *uti possidetis*." The person defrauded by a contract, if he would avoid it, returns what he received. The infant, by avoiding his deed, rescinds his whole contract. *Bigelow* v. *Kinney*, 3 Vt. R. 353. When a party avoids a usurious contract the opposite party is restored to all his previous legal rights, and may recover on any legal claim, previously existing, though it may have been subsequently mingled in the usurious contract, and so been cancelled. *Edgell* v. *Stanford*, 6 Vt. R. 551. These are all defences confined to particular persons, not to be made by others, and when made, and the contract is avoided, it then becomes *void* as to both parties, and it is as if never made, and both parties are reinstated in their former rights. In the case before us, the statute makes this last conveyance *void, as to the creditors* of the grantor. By perfect parity of reasoning, by analogy of principle, by every rule of consistency and symmetry, it must be held that, when the creditors avoid the deed, the law remits and restores the other party to his previously existing legal rights. This gives to the statute its proper and legitimate effect, that is, it permits the purchaser, to hold nothing *by* his fraudulent contract, and the creditors to take all their debtor fraudulently conveyed, and no more. To hold otherwise, would create penalties beyond the statute, and compel the defendant to surrender, not only all he may have fraudulently purchased, but also to give up his previous *bona fide* securities thereon.

But it is said, this enables a man to hold by mortgage without producing the mortgage, and the notes mentioned

CHITTENDEN,
January,
1838.

Irish.
v.
Clayes &
Morse.

therein, in court. That rule of law is founded only on the presumption that notes, not produced, are paid. In this case, the absence of the notes is accounted for, and the presumption of payment is rebutted. It is a solecism for the plaintiff to *avoid* the very contract which paid these notes, and, at the same time, to insist it remains an operative payment. It is still insisted this is keeping on foot a mortgage, after the debt is discharged. This is but another form of stating the same objection. It assumes that the debt is *paid*, when, as to the plaintiff, who has avoided the contract of payment, it is not paid. The mere circumstance that this is so situated, that the debt cannot be enforced against the original debtor, does not prevent the mortgage being kept on foot. This has always been done, in Chancery, when equity required it. This principle has been adopted as law, in this state, if the legal title still remains in the mortgagee. *Marshall* v. *Wood*, 5 Vt. R. 250.

The case of *Hoyt* v. *Dimon*, 5 Day's R. 479, fully sustains the doctrine of this case.

Judgment affirmed.