In re KELTON MOTORS, INC., Debtor.

Gleb GLINKA, Trustee of the Estate
of Kelton Motors, Plaintiff,

v.

BANK OF VERMONT, Defendant.

Bankruptcy No. 89–00255.
Adv. Pro. No. 90–00024A.

See also 130 B.R. 183.

G. Glinka, Glinka & Palmer, Cabot, Vt., Trustee of the Estate of Kelton Motors, pro se (Trustee).

D. Wolinsky, Saxer, Anderson, Wolinsky & Sunshine, Burlington, Vt. for Bank of Vermont (Bank).

MEMORANDUM OF DECISION DETERMINING THE STANDARD OF PROOF UNDER 11 USC §§ 547, 548(a)(2), AND 9 Vt.Stat.Ann. § 2281

FRANCIS G. CONRAD, Bankruptcy Judge.

This matter is before us[1] for pretrial determination of the appropriate standard of proof to be applied under 11 U.S.C. § 547, 11 U.S.C. § 548(a)(2), and a fraudulent conveyance action under 9 Vt.Stat. Ann. § 2281.[2]

Trustee argues that the preponderance of the evidence standard should be applied to each cause of action stated in the complaint. Bank, on the other hand, argues that a higher standard of proof is required in this adversary proceeding.

We hold that the "preponderance of the evidence" standard must be met to prevail on the claims of preferential transfer under 11 U.S.C. § 547 and fraudulent conveyance under 11 U.S.C. § 548(a)(2). But, the "clear and convincing" standard of proof applies in the 11 U.S.C. § 548(a)(1) and the State law based claim of fraudulent conveyance under 9 Vt.Stat.Ann. § 2281.

Under 11 U.S.C. §§ 542(a)[3] and 550(a)[4], Trustee demands Bank turn over property of the estate. Trustee claims that the transferred property at issue, namely a check in the amount of $2,948,255.52, is recoverable as a § 547(b) preference[5], or

---

1. We have jurisdiction to hear this matter under 28 U.S.C. § 1334(b) and the general reference to the Court by the United States District Court for the District of Vermont under Part V of the Local Rules for the District of Vermont. This is a core matter under 28 U.S.C. § 157(b)(2)(F) and (H). This Memorandum of Decision constitutes conclusions of law under F.R.Civ.P. 52, as made applicable by Rules of Practice and Procedure in Bankruptcy Rule 7052.

2. A State claim is cognizable in a Federal bankruptcy proceeding under 11 U.S.C. § 544(b), which states:

   The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law....

3. 11 U.S.C. § 542, **Turnover of property to the estate,** provides in part:

   (a) Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property,

unless such property is of inconsequential value or of no benefit to the estate.

4. 11 USC § 550(a), **Liability of transferee of avoided transfer,** provides, in relevant part:

   (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under sections 544, 545, 547, 548 ... of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property....

5. 11 U.S.C. § 547(b), **Preferences,** provides:

   (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
   (1) to or for the benefit of a creditor;
   (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
   (3) made while the debtor was insolvent;
   (4) made—
     (A) on or within 90 days before the date of the filing of the petition; or
     (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
   (5) that enables such creditor to receive more than such creditor would receive if—(a) the case were a case under chapter 7 of this title;

as a § 548(a)(2) fraudulent conveyance[6], or in the alternative, as a fraudulent conveyance under 9 Vt.Stat.Ann. § 2281.[7]

Here, as in any other civil action, a plaintiff has the burden of proving the material allegations of a complaint. *McCormick on Evidence*, Burden of Proof and Presumptions, § 337 (3d Ed.1989). We recently had an occasion to observe that the terms "burden of proof," "burden of persuasion," and "standard of proof" are not susceptible to easy definition, and are often confused by Judges and litigants alike. *Chittenden Trust Company v. Mayo (In re Mayo)*, 94 BR 315, 321, 18 BCD 931, 20 CBC.2d 641 (Bkrtcy.D.Vt.1988). Often, the standard of proof applicable to a particular case will be determined by the legislature. Other times, it is determined by the Court. The standard of proof applicable to a plaintiff's claim may vary depending on the nature of the facts and the statutory predicate for the action. It is the standard we use as the trier of fact to determine whether the evidence in a trial rises to a level sufficient to establish that an alleged claim is true.

In criminal cases, the standard of proof the trier of fact must use in weighing the evidence is proof "beyond a reasonable doubt." *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). This standard apparently has been the formula since ancient times. *McCormick on Evidence*, Burdens of Proof and Presumptions, § 341 (3d Ed.1989).

Blacks Law Dictionary defines "reasonable doubt" as "doubt based on reason and arising from evidence or lack of evidence, and it is doubt which reasonable man or woman might entertain, and it is not fanciful doubt, is not imagined doubt, and is not doubt that juror might conjure up to avoid performing unpleasant task or duty. Reasonable doubt is such a doubt as would cause prudent men to hesitate before acting in matters of importance to themselves." Id., at p. 1138 (5th Ed.1979) (citations omitted).

*American Jurisprudence 2d* defines "reasonable doubt" as "actual and substantial doubt of the defendant's guilt arising from the evidence, or from a want of evidence, as contradistinguished from a mere vague apprehension." 30 Am.Jur.2d, Evidence § 1171, at 351 (2d Ed.1967), citing, *Holland v. United States*, 209 F.2d 516 (10th Cir.1954), aff'd, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954), reh. denied, 348 U.S. 932, 75 S.Ct. 334, 99 L.Ed. 731 (1955). Additionally, in some cases the term reasonable doubt is defined as "the doubt that jurors are conscious of after going over in their own minds the entire case and after giving consideration to all the evidence." 30 Am.Jur.2d, Evidence, § 1171, at 351–2 (2d Ed.1967).

The Supreme Court has never defined the term "reasonable doubt" and has

---

(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

**6.** 11 U.S.C. § 548(a)(2), **Fraudulent transfers and obligations,** provides:

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

.    .    .    .    .

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

(iii) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

**7.** 9 Vt.Stat.Ann. § 2281, **Fraudulent deeds and transfers,** provides:

Fraudulent and deceitful conveyances of houses, lands, tenements or hereditament, or of goods and chattels, and all bonds, bills, notes, contracts and agreements, all actions, judgments and executions, made or had to avoid a right, debt or duty of another person shall, as against the party whose right, debt or duty is attempted to be avoided, his heirs, executors, administrators and assigns, be null and void.

noted that attempts to explain the couplet to a jury do not usually make the terms any clearer. *Holland v. United States, supra,* 348 U.S. at 140, 75 S.Ct. at 137–38. Consequently, a number of the Federal Circuits, reviewing District Court decisions which omitted instruction on the term reasonable doubt to the jury, have held that it is not an error to omit the definition of reasonable doubt in their instructions. Such circuits reason that the phrase "reasonable doubt" is self-explanatory and is its own best definition. *Modern Federal Jury Instructions,* Burden of Proof, Section 4.01 (1989).[8]

In civil cases, as a general rule, the standard burden or measure of proof imposed on the plaintiff is "preponderance of the evidence." *McCormick on Evidence,* Burdens of Proof and Presumptions, § 340 (3d Ed.1989). The standards applied in a civil suit have constitutional dimensions and range along a "continuum" representing a varying "degree of confidence … in the correctness of factual conclusions" produced in the mind of the trier of fact. *Addington v. Texas,* 441 U.S. 418, 423, 99 S.Ct. 1804, 1808, 60 L.Ed.2d 323 (1979).

■ Furthermore, as the Supreme Court has explained, the standard of proof required of a litigant will be determined by a "due process requirement reflecting not only the weight of the private and public interests affected, but also a societal judgment about how the risk of error should be distributed between the litigants." *Santosky v. Kramer,* 455 U.S. 745, 755, 102 S.Ct. 1388, 1395, 71 L.Ed.2d 599 (1982). Thus, in a civil suit between private parties, the standard of proof the Court will demand depends on the nature of the claim and the policy considerations implied.

■ In most civil cases the standard applied is proof by a "preponderance of the evidence." The reason for this rule is that "as between man and [wo]man, where a

loss must fall upon one or the other, it is right that the law should cast it upon [one person] who is shown to have been the cause of the loss, by proof establishing the reasonable probability of the fact." 30 Am.Jur.2d, Evidence, § 1163, at 337 (2d Ed.1967).

■ "Preponderance of the evidence" has been defined as the weight, credit, and value of the aggregate evidence on either side. It is usually considered to be synonymous with the term "greater weight of the evidence," or "greater weight of the credible evidence." Id., § 1164, at 339. This standard is not so strict as to require the moving party to establish a fact to the "satisfaction of the jury," or to present evidence sufficient to "convince their minds" of any particular fact. Id. It is, as the term itself suggests, a tilting of the scales in favor of the party whose evidence carries greater weight.

■ The Second Circuit has defined preponderance as meaning "that … the facts asserted by the plaintiff are more probably true than false." *Nissho–Iwai Co., Ltd. v. M/T Stolt Lion,* 719 F.2d 34, 38 (2d Cir. 1983). If, after considering all the evidence, including testimony, the trier of fact is satisfied that the moving party's submissions are more probable and credible than the opposing party's evidence, then the moving party will have carried the burden as to each essential point of the claim[s]. On the other hand, if the trier of fact finds that the testimony of both parties is in balance, or equally probable, then the moving party will have failed to sustain the required burden.

In certain classes of civil cases, a heightened standard of proof has been applied because of legislative mandate, or policy considerations. This heightened standard

**8.** See, *United States v. Marquardt,* 786 F.2d 771 (7th Cir.1986); *Murphy v. Holland,* 776 F.2d 470, 478–479 (4th Cir.1985); *Thompson v. Lynaugh,* 821 F.2d 1054, 1060–61 (5th Cir.1987), cert. denied, 483 U.S. 1035, 108 S.Ct. 5, 97 L.Ed.2d 794 (1987); *United States v. Pepe,* 501 F.2d 1142 (10th Cir.1974); *Friedman v. United States,* 381 F.2d 155 (8th Cir.1976); *Blatt v. United States,* 60 F.2d 481 (3rd Cir.1932).

is usually described as proof by "clear and convincing" evidence, or evidence that is "clear and satisfactory," or evidence described by similar terms, or even in rare cases, proof "beyond a reasonable doubt." *McCormick on Evidence, Burden of Proof and Presumptions,* § 340 (3d Ed.1989).

The "clear and convincing" standard is not susceptible to precise definition. For example, terms such as "clear, cogent, and convincing;" "clear, satisfactory, and convincing;" "clear, unequivocal, and convincing;" "clear, distinct, and irresistible;" "clear, unequivocal, and definite;" "plain and convincing beyond a reasonable controversy;" or "clearest and most satisfactory," have all been used interchangeably. 30 Am.Jur.2d, *Evidence,* § 1167 (2d Ed. 1967).

■ The reason for requiring a heightened standard of proof in certain civil cases is embodied in the Due Process clause of the Constitution. The "clear and convincing evidence" standard is used, typically, in civil cases where the defendant's private interests at stake are more substantial than risk of monetary loss. *Addington v. Texas, supra,* 441 U.S. at 424, 99 S.Ct. at 1808–09. An example of cases requiring this heightened standard of proof are: 1) civil cases involving fraud, undue influence, or other similar elements; 2) suits on oral contracts to make a will, and suits to establish the terms of a lost will; 3) suits for the specific performance of an oral contract; 4) civil cases where a criminal act is charged as a part of the case; or, 5) civil cases which involve a statutory penalty. *Wigmore on Evidence, Measure of Jury's Persuasion,* § 2498 (Chadbourn rev. 1981); see also, *McCormick on Evidence, Burden of Proof and Presumptions,* § 340 (3rd Ed. 1989) and 30 Am.Jur.2d, *Evidence,* § 1164 (1989).

The Fifth Circuit in *Aetna Ins. Co. v. Paddock,* 301 F.2d 807 (5th Cir.1962), stated that when a Court requires a party to establish the facts under the clear and convincing standard, the evidence must be "clear in the sense that it is not ambiguous, equivocal, or contradictory; it is evidence that is satisfactory in the sense that it comes from such a credible source as to cause the jurors, as persons of ordinary intelligence, discretion, and caution, to have confidence in it." *Id.,* at 811. In other words, the Court will require the witnesses to such facts to be "credible, and that the facts to which they have testified are distinctly remembered and the details narrated exactly and in due order, so as to enable the trier of the facts to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Id.*

■ Hence, in order to make an ultimate finding of fact under the clear and convincing standard, the trier of fact must be satisfied that the testimony and other supporting evidence at issue compels such fact finder to give it credence, and place confidence in it above and beyond the evidence submitted by the opposing party. We confess that the clear and convincing standard is easier to apply then the preponderance standard because we know and feel the clear and convincing standard when we hear and see the proof the parties offer. With this brief and hardly complete generic opuscule on the various standards of proof, we turn our attention to Trustee and Bank's arguments.

A. Standard of Proof Under 11 U.S.C. § 547(b).

■ To establish an avoidable preference, Trustee must prove the following elements, set forth in 11 U.S.C. § 547(b):

(1) a transfer of property of the debtor;

(2) to or for the benefit of a creditor;

(3) for or on account of an antecedent debt;

(4) made while the debtor was insolvent;

(5) made on or within 90 days before the date of filing of the petition;

(6) that enables such creditor to receive more than it would receive in a Chapter 7 liquidation if the transfer had not been made.

In proposing § 547 to Congress, the draftspersons of the Bankruptcy Reform Act of 1978 identified three goals for the preference section of the Act: "First, it lessens the possibility of a scramble among

creditors for advantage; second, it promotes equality [of distribution among classes]; and third, it eliminates the incentive to make unwise loans in order to obtain a preferential payment or security." H.Doc. No. 137, pt. I, 93d Cong., 1st Sess. 202 (1973) (Report of the Commission on the Bankruptcy Laws of the United States). Agreeing with the Commission's findings, the House Committee Report offered the following statement:

> The purpose of the preference section is two-fold. First, by permitting the trustee to avoid prebankruptcy transfers that occur within a short period before bankruptcy, creditors are discouraged from racing to the courthouse to dismember the debtor during his slide into bankruptcy. The protection thus afforded the debtor often enables him to work his way out of a difficult financial situation through cooperation with all of his creditors. Second, and the more important, the preference provision facilitates the prime bankruptcy policy of equality of distribution among creditors of the debtor. Any creditor that received a greater payment than others of his class is required to disgorge so that all may share equally. The operation of the preference section to deter "the race of diligence" of creditors to dismember the debtor before bankruptcy furthers the second goal of the preference section—that of equality of distribution.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 177, U.S. Code Cong. & Admin. News 1978, p. 5787 (1977). Thus, consistent with Congress' policy of recovering property for equal distribution among creditors, the Code establishes a Federal cause of action, civil in nature, that requires turnover of property. This determination is not criminal in nature, and involves no penalty other than monetary loss.

Our predecessor Bankruptcy Judge Marro, now Senior Bankruptcy Judge, held that all elements under § 547 must be proven by a preponderance of the evidence. *Meyers v. Vermont National Bank (In re Music House, Inc.)*, 11 BR 139, 7 BCD 882, 5 CBC.2d 1240 (Bkrtcy.D.Vt.1980). Judge Marro's decision in *Music House* is consist-

ent with many similar holdings. See, *Matter of Prescott*, 805 F.2d 719 (7th Cir.1986); *In re First Software Corp.*, 107 B.R. 417 (D.Mass.1989); *In re Aspen Data Graphics, Inc.*, 109 B.R. 677, 22 CBC.2d 354 (Bkrtcy.E.D.Pa.1990); *In re Vinzant*, 108 B.R. 752 (Bkrtcy.D.Kan.1989); *In re Vurchio*, 107 B.R. 363 (Bkrtcy.M.D.Fla.1989); *In re Harvard Mfg. Corp.*, 97 B.R. 879, 20 CBC.2d 1355 (Bkrtcy.N.D.Ohio 1989); *In re Borgman*, 48 B.R. 666 (Bkrtcy.Mo.1985); *In re Trejo*, 44 B.R. 539, 12 BCD 568 (Bkrtcy.E.D.Cal.1984); *In re Hillcrest Foods, Inc.*, 40 B.R. 360 (Bkrtcy.Me.1984); *In re Big Three Transp., Inc.*, 41 B.R. 16, 11 CBC.2d 142 (Bkrtcy.W.D.Ark.1983); *Matter of Kennesaw Mint, Inc.*, 32 B.R. 799 (Bkrtcy.Ga.1983); *In re Taylor*, 29 B.R. 5 (W.D.Ky.1983); *In re Utility Stationery Stores, Inc.*, 12 B.R. 170 (Bkrtcy. N.D.Ill.1981). But see, *In re Cleveland Graphic Reproduction, Inc.*, 78 B.R. 819, 16 BCD 876 (Bkrtcy.N.D.Ohio 1987) (Applying clear and convincing evidentiary standard).

Under the doctrine of "stare decisis," when a point of law has been settled by decision, it should not be departed from unless a compelling reason or public policy consideration demands. Blacks Law Dictionary, at p. 1261 (5th Ed.1979). The doctrine is grounded on the theory that society and its citizens expect security, certainty, and predictability in the law, and in its application to their daily affairs. No compelling reason has been shown why we should depart from the precedent of *In re Music House, supra*. Accordingly, we reaffirm the holding under *In re Music House*, and will require Trustee to prove all the elements of the § 547(b) claim by a preponderance of the evidence.

**B. Standard of Proof Under 11 U.S.C. §§ 548(a)(1) and (2).**

§§ 548(a)(1) and (2) deal with, among other things, fraudulent conveyances and represent the most recent codification of a long line of fraudulent conveyance laws extending over two thousand years to at least early Roman law. Under Roman law, a defrauded creditor could

bring a tort action, known as a "Paulian Action," to void a fraudulent conveyance by an insolvent debtor. The policy underlying the Paulian Action was to benefit the public at large by facilitating and encouraging the payment of just debts. Radin, *Fraudulent Conveyances at Roman Law*, 18 Va.L.Rev. 109 (1931).

Fraudulent conveyance laws were also adopted in England as an attempt to curtail resort to ancient "sanctuary laws" as a means of defrauding creditors. "A sanctuary was not merely the interior of a church, but certain precincts defined by custom or royal grant. Debtors could take sanctuary in one of these precincts, live in relative comfort, and be immune from execution by their creditors." Baird and Johnson, *Voidable Preferences*, 38 Vanderbilt Law Review 713, at 829 (1985). Thus, debtors could sell or collusively transfer their property, take sanctuary, and leave their creditors without recourse except, perhaps, to receive a small payment from the debtor in return for release from the obligations. Reacting to this abuse, Parliament passed a 1376 statute [9] that allowed creditors to execute upon lands and chattels collusively conveyed, and, again, in 1476, passed another statute voiding fraudulent gifts and chattels made in trust.[10] Zinman, Houle & Weiss, *Fraudulent Transfers According to Alden, Goss and Borowitz: A Tale of Two Circuits*, 39 The Business Lawyer 988 (May 1984).

In 1571 Parliament passed the Statute of 13 Elizabeth, making illegal and void any transfer made for the purpose of hindering, delaying, or defrauding creditors.[11] The Statute of 13 Elizabeth has since served as the model for common law and modern American fraudulent conveyance laws.[12]

Under the Statute of 13 Elizabeth, a transfer could only be avoided if the debtor

acted with actual "intent ... to defraud." This requirement made exacting attempts to give effect to the Statute's purpose, given the difficulty to show such intent. To remedy this situation, the Statute was judicially expanded to include within its prohibitions transactions where implied intent to defraud creditors could be demonstrated. Thus, in the absence of proof that the debtor had an actual, subjective intent to defraud creditors when the property was transferred, a rebuttable presumption of such intent was established if, at the time of transfer, significant so-called "badges of fraud" were shown to exist, such as a transfer of property in exchange for a grossly inadequate consideration. Id. at 989.

For a number of years, American Courts administering bankruptcy law were confused about the application of 13 Elizabeth. This confusion stemmed primarily from attempts by creditors to expand the doctrine of implied fraud, through use of the badges of fraud, and to characterize all conveyances that harmed creditors as "fraudulent"—even though the debtor had no actual intent to defraud creditors. In response to this confusion, the National Conference of Commissioners on Uniform State Laws stated:

> The desirability of enacting the [UFCA] is much enhanced by existing confusion in the law. There are few legal subjects where there is a greater lack of exact definition and clear understanding of boundaries....

> The confusion and uncertainties of the existing law which have been referred to are due primarily to three things:

> First, the absence of any well recognized, definite conception of insolvency.

---

**9.** 50 Ed. III, c. 6 (1376).

**10.** 3 Hen. VII, c. 4 (1476).

**11.** 13 Eliz., ch. 5 (1571).

**12.** For example: (1) the Statute of 13 Elizabeth was incorporated verbatim in England's Bankruptcy Act of 1623, 21 Jac. I, c. 19 (1623); (2) the first bankruptcy laws of the United States followed English bankruptcy law precedent by

including a fraudulent conveyance provision; (3) numerous State statutes and the common law are based on the Statute of 13 Elizabeth, 4 *Collier on Bankruptcy*, ¶ 67.01 (14th Ed.1978); and (4) the Uniform Fraudulent Conveyance Act and the Bankruptcy Reform Act of 1978 are also based on the statute of 13 Elizabeth, 4 *Collier on Bankruptcy*, ¶ 548.02 (15th Ed.1983). See also, Note, 71 Iowa Law Rev. 1437 (1986).

Second, failure to make clear the persons legally injured by a given fraudulent conveyance.

Third, the attempt to make the Statute of Elizabeth cover all conveyances which wrong creditors, even though the actual intent to defraud does not exist.

Uniform Fraudulent Conveyance Act (UFCA), Commissioners' Prefatory Note, 7A U.L.A. 162 (1978). As such, the Commission drafted a model fraudulent conveyance law based on the Statute of 13 Elizabeth, which codified the "badges of fraud" into specific sections.

In 1938, the drafters of the Bankruptcy Act, in § 67d, incorporated the essential provisions of the UFCA because it "was deemed to be declaratory of the better decisions of American state courts construing the Statute of Elizabeth and because, it was believed, it would promote uniformity under the Bankruptcy Act with respect to the subject of fraudulent conveyances." 4 *Collier on Bankruptcy* ¶ 67.29, p. 482 (14th Ed.Supp.1988).

In the most recent revision of bankruptcy law, the Bankruptcy Reform Act of 1978, which enacted the Bankruptcy Code, § 548 replaced § 67d of the Bankruptcy Act. Congress intended that § 548 incorporate the substantive provisions of § 67d, and clearly indicated that § 548 should be viewed as a descendent of the Statute of 13 Elizabeth. H.R.Rep. No. 595, 95th Cong., 1st Sess. 375 (1977); S.Rep. No. 989, 95th (1978).

In an action under 11 U.S.C. § 548, the trustee has the burden of establishing all of the elements that render a particular transfer fraudulent. *In re North American Dealer Group, Inc.*, 62 B.R. 423 (Bkrtcy E.D.N.Y.1986); *In re Minnesota Utility Contracting, Inc.*, 101 B.R. 72, 21 CBC.2d 445 (Bkrtcy Minn.1989); *In re Damason Constr. Corp.*, 101 B.R. 775 (Bkrtcy.M.D.Fla.1989); *In re Pinetree Partners, Ltd.*, 87 B.R. 481 (Bkrtcy. N.D.Ohio 1988).

*Collier on Bankruptcy* defines fraud as "any deceit, artifice, trick, or design involv-

ing direct and active operation of the mind, used to circumvent and cheat another...." 3 *Collier on Bankruptcy* ¶ 523.08[5] (15th Ed.1988). A trustee maintaining an action to recover property under § 548 must prove different elements under subsection 548(a)(1), as opposed to, subsection 548(a)(2). Section 548(a)(1) requires proof of "actual intent" to hinder, delay, or defraud a creditor, while, § 548(a)(2) is the "implied fraud" section and allows the trustee to recover transfers that were made under such suspicious circumstances that they are conclusively presumed to have been fraudulent without any proof of the debtor's actual mental state. *In re Anchorage Marina, Inc.*, 93 B.R. 686, 20 CBC.2d 1091 (Bkrtcy.D.N.D.1988); see also, 4 *Collier on Bankruptcy* ¶ 548.03 (15th Ed.1988). But see, *Grogan v. Garner*, —— U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (Preponderance of evidence standard in 11 U.S.C. § 523(a) discharge actions.).

Given the different elements that must be proven under § 548, and the presumption created under § 548(a)(2), Courts have applied different evidentiary standards to each section. For example, some Courts have held that § 548(a)(1) actual fraud must be proved by clear and convincing evidence, but § 548(a)(2) implied fraud is subject only to the preponderance of the evidence standard. *In re Anchorage Marina, Inc., supra,* 93 B.R. at 691; *In re Metro Shippers, Inc.*, 78 B.R. 747, 16 BCD 847 (Bkrtcy.E.D.Pa.1987); *In re of Warner*, 65 B.R. 512 (Bkrtcy.S.D.Ohio 1986).

A presumption is an assumption made by the law, compelling a Court to a resulting conclusion. 32B Am.Jur.2d, *Federal Rules of Evidence*, § 59 (1989). Rule 301 of the Federal Rules of Evidence [13] provides:

In all civil actions and proceedings not otherwise provided for by Act of Congress or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such par-

---

**13.** The Federal Rules of Evidence applies to bankruptcy proceedings, pursuant to Bankrupt-

cy Rule 9017, which states: "The Federal Rules of Evidence ... apply in cases under the Code."

ty the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast.

Id. Moreover, *Collier* states:

> If the two conditions are present, viz "less than reasonably equivalent value," and insolvency or resulting insolvency, there is a conclusive presumption of fraud, any intent to the contrary notwithstanding. Absence of either of the specified conditions is, on the other hand, fatal to the presumption.

4 *Collier on Bankruptcy* ¶ 548.03 (15th Ed.1988). Thus, the trustee must introduce facts necessary to establish the presumption. Once these facts are introduced, a prima facie case is established and the trustee will prevail, absent contradicting evidence on rebuttal.

The presumption of intent to defraud is a fundamental difference between an action brought under § 548(a)(1) and § 548(a)(2). This difference leads us to the conclusion that different evidentiary standards for actual and implied fraud must be applied, because: (1) the judicially created presumption under § 548(a)(2) no longer requires a moving party to prove actual intent to defraud creditors; (2) the purpose of enacting § 548(a)(2) was to remove the difficulty of proving fraud and to give effect to the policy of the Bankruptcy Code; and, (3) an action brought under § 548(a)(2) is civil in nature: i.e., it involves no penalty or any other policy consideration that requires a heightened standard of proof. We hold that Trustee must prove all elements of the § 548(a)(2) claim by a preponderance of the evidence. Furthermore, because "actual" intent to hinder, delay, or defraud creditors must be proved under 11 U.S.C. § 548(a)(1) and no presumption is created, this Court holds that Trustee must prove all elements

under § 548(a)(1) by the clear and convincing evidentiary standard.

**C. Standard of Proof Under 9 Vt.Stat. Ann. § 2281.**

Section 544(b) of the Bankruptcy Code allows a trustee to avoid a transfer of a debtor's interest in property if the transfer is voidable under applicable law. Section 544(b) is derived from former § 70e of the Bankruptcy Act and is geared to enable a trustee to resort to State law to recover property of the estate where the State law may have a more favorable statute of limitations.[14]

Trustee claims that the property transferred is voidable by the Vermont Fraudulent Conveyance Law 9 Vt.Stat.Ann. § 2281. This action is statutory, but is subject to all the requirements of common law since the enactment of the Statute of 13 Elizabeth, ch. 5 (1570), from which the Vermont statute is derived. *Becker v. Becker*, 138 Vt. 372, 416 A.2d 156 (1980); *McLane v. Johnson*, 43 Vt. 48, 60–62 (1870); *Carpenter v. McLure*, 39 Vt. 9, 15 (1866), *Brackett v. Waite*, 4 Vt. 389, 399 (1832); *Weeks v. Wead*, 2 Aik 84 (Vt.1826). The Statute of 13 Elizabeth provides, in pertinent part:

> I. ... the avoiding and abolishing of feigned, covinous[15] and fraudulent feoffment, gifts ... conveyances ... which ... conveyances, ... have been and are devised and contrived of malice, fraud, covin, collusion or guile, to the end, purpose and intent, to delay, hinder or defraud creditors and others of their just and lawful actions, suits, debts....
>
> II. Be it further declared and enacted ... that all and every ... and every conveyance ..., to or for any intent or purpose before declared and expressed, shall be from henceforth deemed and taken (only as against that person ... by

**14.** The statute of limitations under 9 Vt.Stat. Ann. § 2281 is four (4) years. 13 Vt.Stat.Ann. § 4506, **Penalty accruing to party aggrieved,** states: "Actions upon a statute for a penalty or forfeiture given in whole or in part to the party aggrieved shall be commenced within four (4) years after the commission of the offense, and not after."

Under the Bankruptcy Code, the statute of limitations to avoid a fraudulent conveyance or preference under 11 U.S.C. §§ 547, 548 is two (2) years. 11 U.S.C. § 546(a).

**15.** Covin is defined as a secret conspiracy or agreement between two or more persons to injure or defraud another. Blacks Law Dictionary, at p. 330 (5th Ed. 1979).

such guileful, covinous or fraudulent devices and practices, as is aforesaid, are shall or might be in any ways disturbed, hindered, delayed or defrauded) to be clearly and utterly void, frustrate and of none effect; any pretense, color, feigned consideration, expressing of use or any other matter or thing to the contrary notwithstanding.

III. And be it further enacted ... that all and every the parties to such feigned, covinous or fraudulent ... conveyance ... and being privy and knowing of the same ... shall incur the penalty and forfeiture of one year's value of the said lands, ... leases, rents, or other profits, of or out of the same; ... and the whole value of the said goods and chattels; ... and also so much money as are or shall be contained in any such covinous and feigned bond; the one moiety [16] ... to be to the Queen ... and the other moiety to the party or parties grieved by such feigned and fraudulent ... conveyance ...; and also being thereof lawfully convicted, shall suffer imprisonment for one half year without bail or mainprise.

VI. Provided also, ... that this act ... shall not extend to any [conveyance] ... made ... upon good consideration and *bona fide* lawfully conveyed ... to any person, ... not having at the time of such conveyance ..., any manner of notice or knowledge of such covin, fraud or collusion.... Statute of 13 Elizabeth, ch. 5 (1570).[17]

Under the original draft of Vermont's fraudulent conveyance statute, as under statute Elizabeth 13, ch. 5, the aggrieved party could void a conveyance and recover the penalty in one statutory section. *Beach v. Boynton,* 26 Vt. 725 (1854). Upon revision in 1839, the statute was broken down into two sections. One section entitled the aggrieved party to void the transfer; the other entitled the aggrieved party to bring a civil suit to recover a penalty. Half of any penalty went to the plaintiff, and half went to the county. 9 Vt.Stat.Ann. §§ 2281 and 2282.[18] Thus, it is possible for an aggrieved party to set aside the conveyance and not recover the penalty. *Boynton,* at 734; *Brooks v. Clayes,* 10 Vt. 37 (1838).

To prevail under 9 Vt.Stat.Ann. § 2281, Trustee must establish, by the requisite weight of the evidence, (1) that there existed a right, debt, or duty owed to a claimant by a person accused of fraud; (2) that the defrauder conveyed property that was subject to execution in satisfaction of the debt; (3) the nature of any consideration, or if no consideration, whether the grantee knew or should have known of the fraudulent intent of the grantor; and (4) the defrauder acted fraudulently to the hindrance of the claimant's rights against him. *Becker, supra,* at 138 Vt. at 375, 416 A.2d 156; *Gore v. Green Mountain Lakes, Inc.,* 140 Vt. 262, 438 A.2d 373 (1981).

Additionally, under 9 Vt.Stat.Ann. § 2281, the word "void" means voidable [19] and vests legal title in the grantee, subject only to divestment by the creditors of the grantor, if they choose to impeach.[20]

---

**16.** Moiety is defined as the half of anything. Blacks Law Dictionary, at p. 906 (5th Ed.1979).

**17.** Statute is found in whole in Am.Jur.2d Desk Book, Item No. 207, pp. 811–812.

**18.** Trustee has not raised 9 Vt.Stat.Ann. § 2282 in the complaint and, therefore, the issue of the appropriate evidentiary standard of proof under § 2282 is not ripe for decision at this time.

**19.** 11 U.S.C. § 548(c) also uses the term voidable.

**20.** In *Irish v. Clayes & Morse,* 10 Vt. 81, 85 (1838), the Court stated:
Contacts are frequently called void, which are only voidable. An infant's deed is called void, but only so when he shall have avoided it. A contract, in which one of the parties is defrauded, is said to be void as to him, but is only so when he has avoided it. A usurious contract is called void; but it is only so, when it as avoided by the party, on whom the usury is practiced. The general rule of law is the same in all such cases, that is, where the contract is avoided, the parties are restored to their previously existing rights. They are in *status ante bellum,* and not in *uti possidetis.* The person defrauded by a contract, if he would avoid it, returns what he received ... and when the contract is avoided, it then becomes void as to both parties, and it is as if never made, and both parties are reinstated in their former rights.... [Therefore], when the creditors avoid the deed, the law remits

*Jones v. Williams*, 94 Vt. 175, 185, 109 A. 803 (1920). The transfer, therefore, creates an interest in the grantee that makes him/her a necessary party. *Becker, supra*, 138 Vt. at 380, 416 A.2d 156. Moreover, before a trustee or a creditor may execute on a judgment execution, he/she must prove that the transfer involved: (1) no consideration; or (2) if there was consideration, that the grantee was not a bona fide[21] purchaser. *Becker v. Becker*, 138 Vt. 372, 376, 416 A.2d 156 (1980); but see, *Wilbur v. Nichols*, 61 Vt. 432, 18 A. 154 (1889) (Inadequate consideration, or no consideration, is not void as to creditors, if grantor has remaining property sufficient with which to pay his/her debts).

Hence, if a grantor has acted fraudulently, then the knowledge of it on the part of the grantee must be proved. This may be done by showing a trifling consideration, or none at all; by acts inconsistent with the bona fide ownership of the property; by confessions of the nature of the bargain; or by other circumstances, tending to show a knowledge of the designs of the grantor. *Bridge v. Eggleston*, 14 Mass. 250 (1817).

9 Vt.Stat.Ann. § 2281 is essentially a civil fraud action, and under Vermont Law fraud must be proved by "clear and convincing evidence." *Poulin v. Ford Motor Co.*, 147 Vt. 120, 513 A.2d 1168 (1986); *Hughes v. Hold*, 140 Vt. 38, 435 A.2d 687 (1981); *Leno v. Meunier*, 125 Vt. 30, 209 A.2d 485 (1965).

The *Becker* Court, supra, discussing 9 Vt.Stat.Ann. § 2281, held:

> The fraud of a voluntary grantor may be an actual fraudulent purpose, or the fraud which the law imputes to him from the condition of his estate and the necessary consequence of his act.... Therefore, the question here is whether, on the

facts ... the law will impute fraud to ... the defendant ... from the condition of his estate, and the necessary consequence of his act, regardless of any actual fraudulent intent or purpose on his part ... since the law in no way presumes fraud.

*Id.*, 138 Vt. at 378, 416 A.2d 156.

Thus, as the *Becker* Court states:

> Once the [trustee] has established that the conveyance was voluntary and that the condition of the debtor's estate is such that he cannot collect on his debt, the law will impute fraud to the transferor. By this imputation, fraud may be inferred, but the party seeking to sustain the transfer may rebut it by meeting its burden of going forward with evidence which shows that at the time of the transfer the debtor had resources sufficient to answer his debts. The burden of persuasion remains throughout the trial with the proponent of the position that the conveyance was fraudulent.

*Id.*, 138 Vt. at 378–379, 416 A.2d 156.

Therefore, because the law in no way "presumes" fraud, Trustee must prove his case under § 2281 by the same evidentiary standard of proof required under Vermont civil actions involving fraud, that is, by "clear and convincing" proof.

■ Although neither party raised the issue of whether 11 U.S.C. § 544(b) preempts the application of Vermont law in determining the appropriate standard of proof, we must decide if we may use State law or must follow Federal law on this State based Federal cause of action.

There are no cases directly on point that discuss the appropriate standard of proof to be applied in a Federal claim using State

---

and restores the other party to his previously existing legal rights. This gives the statute its proper and legitimate effect, that is, it permits the purchaser, to hold nothing by his fraudulent contract, and the creditors to take all their debtor fraudulently conveyed, and *no more.*
*Id.*

**21.** This requirement is also necessary under 11 U.S.C. § 548(c) which states: "Except to the

extent that a transfer or obligation voidable under this section is voidable under section 544, 545, or 547 of this title, a transferee or obligee of such a transfer or obligation that takes for value and *in good faith* has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation. 11 U.S.C. § 548(c). (Emphasis ours).

law. *Moore's Federal Practice* provides little guidance.

> [A] state claim may ... be in the federal court on a federal basis. For example, assume that a bankruptcy trustee sues in a federal court to avoid a fraudulent transfer; state a claim under Section [548]—the Act's adaptation of the Uniform Fraudulent Conveyance Act, and also a claim under state law—the state fraudulent conveyance act—pursuant to [544(b)]; and that the two claims are factually the same or closely related. The bankruptcy Act confers federal jurisdiction over each claim. It may be that the trustee would like to be eclectic—emphasize the state claim for purposes of the statute of limitations but the federal claim because of a favorable presumption. Or the elements of the claims may vary and there may be differing types of presumptions. If the case is tried without a jury, the judge should be able to deal separately with the two claims and the different presumptions applicable to each. If, however, the case is tried to a jury can it be expected to apply the differing effects of the presumptions to the separate claims? If the court's instructions can sufficiently make clear to the jury the problems involved, fine. Possibly a special verdict may be useful. Or the court may resolve the matter in still a different fashion.

10 *Moore's Federal Practice, Federal Rules of Evidence*, § 302.11 (2d Ed.1990). Perhaps the issue may be decided by an application of the preemption doctrine to it.

The United States Supreme Court enunciated a three-pronged inquiry to ascertain whether a particular Federal law preempts State law. *Pennsylvania v. Nelson*, 350 U.S. 497, 76 S.Ct. 477, 100 L.Ed. 640 (1956). In *Nelson*, the Supreme Court held that a Court should look toward: (1) the pervasiveness of the Federal regulatory scheme; (2) the Federal occupation of the field as necessitated by the need for national uniformity; and (3) the danger of conflict between State laws and the administration of the Federal program when determining whether a particular law preempts State law. *Id.* 350 U.S. at 502–510, 76 S.Ct. at 480–484.

11 U.S.C. § 544(b) expressly gives the trustee the right to avoid any transfer of an interest in property which is voidable under State law. This express grant of power is placed within a statutory scheme, the United States Bankruptcy Code, that beyond a peradventure of a doubt, is a pervasive Federal regulatory scheme, namely, a uniform laws on bankruptcy. See, Article I, Clause 8, U.S. Constitution. This express grant of power to the trustee does not conflict with State law. In fact, it encourages uniformity at the State and Federal level. As the Supreme Court in *Butner v. United States* held, "property interests are created and defined by state law" and the application of State law "serves to reduce uncertainty, discourage[s] forum shopping, and prevent[s] a party from receiving a windfall merely by reason of the happenstance of bankruptcy." *Id.*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136, 4 BCD 1259, 19 CBC 481 (1979). Thus, applying *Nelson* and *Butner* to the facts at bar, we hold that 11 U.S.C. § 544(b) does not preempt the application of a State standard of proof in determining whether a trustee may avoid an interest or obligation under applicable State law.

In conclusion, because 11 U.S.C. § 544(b) does not preempt State law, and the determination of whether property is "property of the estate" is by State, not Federal law, we hold that the evidentiary standard of proof applied to a trustee's claim under 11 U.S.C. § 544(b) is determined by State law. As such, Trustee must prove all elements under 9 Vt.Stat.Ann. § 2281 by "clear and convincing" evidence. In addition, we hold that the "preponderance of the evidence" standard must be met by Trustee with respect to the claims of preferential transfer under 11 U.S.C. § 547 and fraudulent conveyance under 11 U.S.C. § 548(a)(2). Further, we hold that the "clear and convincing" standard of proof applies in a fraudulent conveyance claim under 11 U.S.C. § 548(a)(1) and 9 Vt.Stat.Ann. § 2281.

An appropriate Order will be entered.