In re METRO SHIPPERS,
INC., Debtor.

Fred ZIMMERMAN, Trustee, Plaintiff,

v.

Steven SAVIELLO, George DiDaniels,
John Foley, Jr., Thomas F.X.
Foley, Defendants.

Bankruptcy No. 85–01934G.

Adv. No. 86–0162G.

United States Bankruptcy Court,
E.D. Pennsylvania.

Oct. 19, 1987.

Lee W. Shelly, Foley, Shelly & Niemann, Holmdel, N.J., for movant/defendant, Thomas F.X. Foley.

Paul B. Maschmeyer, Melvin Lashner Associates, Philadelphia, Pa., for plaintiff, Fred Zimmerman.

Lawrence J. Tabas, Charen and Goldberg, Philadelphia, Pa., for trustee, Carl Helmetag, Jr.

Geri H. Gallagher, Miller, Turetsky & Rule, Norristown, Pa., for defendant, Steven Saviello.

Joseph N. Bongiovanni, Bongiovanni & Berger, Philadelphia, Pa., for defendant, George DiDaniels.

Paul A. Patterson, White and Williams, Philadelphia, Pa., for defendant, John Foley.

## OPINION

BRUCE FOX, Bankruptcy Judge:

This is an action filed by a chapter 7 trustee to recover an alleged fraudulent conveyance pursuant to 11 U.S.C. § 548. Presently before me is the motion for summary judgment filed by one of the defendants, Thomas F.X. Foley, Esquire. For the reasons set forth below, the motion will be granted in part and denied in part.

## I.

In order to understand the issues raised by the pending motion, it is helpful to first set out the procedural and factual background of this case.

The debtor in this chapter 7 case is Metro Shippers, Inc. ("Metro"). Metro is a corporation which was formerly engaged in the business of interstate shipping. On May 13, 1985, an involuntary chapter 7 petition was filed against Metro. Metro ceased its business operations at the end of May 1985. An order for relief was entered on the involuntary petition on July 8, 1985 and Fred Zimmerman was appointed interim trustee on September 13, 1985.

The interim trustee initiated this adversary proceeding by complaint filed on March 4, 1986. Named as defendants are: (1) Steven Saviello, described as the former president and major shareholder of Metro; (2) George DiDaniels, described as a former officer and principal of Metro; (3) John Foley, Jr., also described as a former officer and principal of Metro; and (4) Thomas F.X. Foley (the movant herein), described as the former corporate counsel and a former principal of Metro. The complaint alleges that in the period from May 31, 1984 to May 31, 1985, Metro paid the defendants in excess of $300,000.00 as follows: Saviello ($130,371.00); DiDaniels ($63,327.00); John Foley ($56,065.00); and Thomas Foley ($66,077.00). According to the complaint, Metro was "hopelessly insolvent" [1] and the defendants had knowledge of Metro's financial condition when the payments were made.

The complaint states two claims. In count I, the trustee asserted that the payments to the defendants were made with the purpose of delaying, hindering and defrauding the unpaid creditors of Metro and constituted fraudulent transfers avoidable under 11 U.S.C. § 548(a)(1). In count II, the trustee asserted that the defendants deliberately operated the debtor's business at a loss and refused to pay the trade creditors while simultaneously paying themselves the aforementioned sums. The trustee alleged that Metro did not receive reasonably equivalent value for the payments made to the defendants and that the transfers constituted a fraudulent transfer within the meaning of 11 U.S.C. § 548(a)(2)(A) and (B)(i).

Each defendant filed an answer to the trustee's complaint.[2] On April 17, 1986, simultaneously with his answer, Thomas Foley (hereinafter "T. Foley" or "attorney Foley") also filed a motion for summary judgment accompanied by an affidavit. The trustee filed an unverified answer and a memorandum of law in opposition to T. Foley's motion on May 20, 1986. T. Foley then filed a supplemental affidavit in support of his motion on June 18, 1986.

Meanwhile, other events transpired in the underlying bankruptcy case which retarded resolution of T. Foley's motion in this adversary proceeding. At the meeting of creditors in the "main" case, which was not commenced until May 20, 1986, (after the commencement of the instant adversary proceeding), the creditors elected Carl Helmetag as trustee in place of the interim trustee, Fred Zimmerman. As a result of a legal dispute, the election of the trustee was not validated by the court until August 5, 1986. *See In re Metro Shippers, Inc.,* 63 B.R. 593 (Bankr.E.D.Pa.1986). The elected trustee, with court approval, then replaced the law firm which has been serving as counsel to the interim trustee.

During the pendency of the dispute concerning the election of the trustee, the

---

**1.** The complaint asserts that, during the one year period at issue, Metro did not pay a substantial portion of its trade debt and that when the involuntary bankruptcy petition was filed Metro owed its trade creditors in excess of $3.5 million.

**2.** Thomas Foley also filed counterclaims based on termination of his employment contract with the debtor by the trustee and on a cause which appears to be akin to malicious prosecution. Attorney Foley additionally appears to be pursuing sanctions pursuant to F.R.C.P. 11 as implemented in this proceeding by Bankruptcy Rule 9011. However, no formal motion for Rule 11 sanctions appears on the dockets or in the court file in this matter. In any event, Thomas Foley does not seek summary judgment on his counter-claims and this opinion will not address the issue of sanctions under Rule 11.

hearing on T. Foley's motion for summary judgment was "adjourned generally." It appears that T. Foley was content to see whether the interim trustee would be replaced and, if so, whether the elected trustee wished to pursue the fraudulent conveyance litigation. However, the parties were apparently unable to resolve this matter and on December 11, 1986, T. Foley filed a request for a hearing on his motion. After three continuances, a hearing was held on February 26, 1987. Both the trustee and T. Foley were then accorded an opportunity to file supplemental memoranda of law, which they have done.

## II.

In support of his motion for summary judgment, T. Foley relies on his affidavit and supplemental affidavit together with attached exhibits and on a stipulation filed by the parties.

The thrust of T. Foley's affidavits is an averment that he received the funds at issue as compensation from the debtor for his work as corporate counsel pursuant to an employment contract. T. Foley's affidavits set forth extensive time records related to various matters which he handled for the debtor "from May 14, 1984 through the bankruptcy of Metro." [3] In sum, T. Foley avers that he spent 819.35 hours on Metro business and that the reasonable compensation for his time is at the hourly rate of $100.00.[4] He thus concludes that he provided the debtor with $81,935.00 in services during the year immediately preceding its bankruptcy.

The exhibits attached to the affidavits prominently feature an employment contract between T. Foley and the debtor dated January 1, 1983, which provided for T. Foley to be employed as corporate counsel to the debtor at an annual salary of $57,000.00 plus $12,000.00 expenses. An undated rider to the contract provided for an increase in attorney Foley's compensation

to $66,000.00 yearly. T. Foley's affidavit states that the increased compensation commenced in 1983. He further avers that his compensation as an employee of the debtor comprises the entire $66,077.00 which the trustee seeks to recover in this action.

T. Foley also relies on a stipulation filed in this matter in June of 1986 which states that "Thomas F.X. Foley was never an officer, director or shareholder of Metro Shippers Inc." and that "there is no evidence of criminal conduct of Thomas F.X. Foley in the performance of his duties for Metro...."

In response, the only affidavit submitted by the trustee was made by trustee's counsel in May, 1986. The substance of the affidavit is that the trustee had not had an opportunity to complete discovery.[5] Since that time, the trustee has not come forward with any supplemental affidavits and does not appear to challenge the time records or other information set forth in T. Foley's affidavits. The only factual material which the trustee relies on is snippets of several depositions, which will be summarized in connection with the discussion below.

## III.

Fed.R.Civ.P. 56(c) states that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Fed.R.Civ.P. 56(e) further provides:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set

---

3. See note 11, *infra.*

4. Attorney Foley apparently charged this rate to other clients during the period of time at issue.

5. It should be noted that the affidavit of trustee's counsel was filed more than one year ago.

Since that time the trustee deposed T. Foley. Additionally, the trustee has been in possession of all of the legal files of Metro Shippers, Inc. during the pendency of this lawsuit.

forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment if appropriate, shall be entered against the adverse party.

The Supreme Court has recently expounded at great length upon the standard for summary judgment established by Rule 56. The court has stated:

In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). *Accord, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *See also, Wisniewski v. Johns–Manville Corp.,* 812 F.2d 81 (3d Cir.1987); *Tigg Corp. v. Dow Corning Corp,* 822 F.2d 358 (3d Cir.1987); *Sorba v. Pennsylvania Drilling Company, Inc.,* 821 F.2d 200 (3d Cir.1987).

In *Celotex* the defendant, in moving for summary judgment, did not support its motion with affidavits or other evidentiary material negating plaintiff's claim. The court nevertheless relied on the plain language of Rule 56 to hold that the party opposing summary judgment is responsible to "go beyond the pleadings" and present evidence as to issues on which that party will have the burden at trial. *Celotex* at 106 S.Ct. 2553.

Concurrently, in *Anderson* the court stated:

in ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden. This conclusion is mandated by the nature of this determination. The question here is whether a jury could reasonably find either that the plaintiff proved his case by the quality and quantity of evidence required by the governing law or that he did not.

*Anderson* at 106 S.Ct. 2513.

This determination must be made based on the evidence proffered viewed in the light most favorable to the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Tigg; Sorba.*

■ These cases teach that the issue for determination on summary judgment is whether the evidence when viewed in the light most favorable to the non-moving party is sufficient for a trier of fact to find all essential elements of that party's case. In marshalling the evidence, the non-moving party is responsible to create an adequate record as to each essential element on which it will bear the burden at trial.

## IV.

In an action under 11 U.S.C. § 548, the trustee has the burden of establishing all of the elements which render a particular transfer fraudulent. 4 *Collier on Bankruptcy,* ¶ 548.10 at 548–118 (15th ed. 1985). ("Collier"). *See Chorost v. Grand Rapids Factory Showrooms Inc,* 77 F.Supp. 276 (D.N.J.1948), *aff'd* 172 F.2d 327 (3d Cir. 1949); *In re North American Car Dealer Group, Inc.,* 62 B.R. 423 (Bankr.E.D.N.Y. 1986). *See also In re Owen J. Rogal D.D.S., Ltd.,* 38 B.R. 677 (Bankr.E.D.Pa.1984).

Different elements must be proved to establish a fraudulent transfer under §§ 548(a)(1) and 548(a)(2). Section 548(a)(1) requires proof of "actual intent" to hinder, delay or defraud a creditor. However, an action under section 548(a)(2)(A) can be maintained whenever an insolvent debtor received less than reasonably equivalent

value for a transfer.[6] In cases under 548(a)(2) intent is presumed.

With regard to cases brought under § 548(a)(2)(A) and (a)(2)(B)(i), *Collier* states:

> If the two conditions are present, viz. "less than reasonably equivalent value," and insolvency or resulting insolvency, there is a conclusive presumption of fraud, any intent to the contrary notwithstanding. Absence of either of the specified conditions is, on the other hand, fatal to the presumption. (footnotes omitted.)

*Collier* ¶ 548.03 at 548–48, 49. *See also Collier,* ¶ 548.02 at 548–29, 30.

Thus, a fundamental difference between an action under 548(a)(1) and 548(a)(2) is that under (a)(1), actual intent must be proved, while under (a)(2), intent will be presumed. *Matter of Warner,* 65 B.R. 512 (Bankr.S.D.Ohio 1986); *see also Keates v. Register,* 74 F.Supp. 966 (E.D.Pa.1947). This difference has led to formulation of different substantive standards of proof for cases under each provision. Actual intent under section 548(a)(1) must be proved by clear and convincing evidence. *In re Metro Paper, Inc.,* 18 B.R. 56 (Bankr.D.D.C.1982); *Matter of Willson Dairy Co.,* 30 B.R. 67 (Bankr.S.D.Ohio 1981). Elements of a case under § 548(a)(2) need only be established by a preponderance of the evidence. *Matter of Warner.* These different standards emerge from the historic reluctance of courts to find fraud absent a showing which goes beyond the mere weight of the evidence. *See Lackawanna Pants Mfg. Co. v. Wiseman,* 133 F.2d 482 (6th Cir.1943). *See also In re Paolino,* 75 B.R. 641 (Bankr.E.D.Pa.1987); *In re Woerner,* 66 B.R. 964 (Bankr.E.D.Pa.1986) (clear and convincing evidence of fraud required under 11 U.S.C. 523(a)(2)(A)).

It remains then to apply the standard for summary judgment as set forth in Rule 56 and as explicated in *Celotex* and *Anderson* to the motion made by T. Foley for summary judgment under 548(a)(1) and 548(a)(2) in light of the mandated substantive evidentiary standards.

### A. *Section 548(a)(1)*

As set forth above, a case under 548(a)(1) requires proof of "actual intent to hinder, delay or defraud...." Numerous courts have held that the question of intent in an action based on fraudulent transfer does not lend itself to resolution by summary judgment. *Warner, supra* at 520; *In re Independent Clearing House,* 41 B.R. 985, 1007 (Bankr.D.Utah 1984) *aff'd in part, rev'd in part,* 62 B.R. 118 (D.Utah 1986); *In re Euro–Swiss International Corp.,* 33 B.R. 872 (Bankr.S.D.N.Y.1983); *Matter of S & W Exporters, Inc.,* 16 B.R. 941, 947 (Bankr.S.D.N.Y.1982). *See also, Teledyne Industries, Inc. v. Eon Corp.,* 373 F.Supp. 191 (S.D.N.Y.1974). In general, questions of motive and intent are particularly difficult to resolve without trial, because subjective feelings resist reduction to the forms of evidence which can be submitted on motion for summary judgment. *See Empire Electronics v. United States,* 311 F.2d 175 (2d Cir.1962).

In the case at bar, movant T. Foley has presented little or no evidence by way of affidavit or otherwise on the question of intent. He argues, however, that his status as an employee and the services he performed for the debtor preclude a determination that any transfer to him was made with intent to hinder, delay or defraud other unpaid creditors.

In response, the trustee has presented portions of deposition testimony by T. Foley and George DiDaniels, another of the defendants in this case. The substance of the testimony presented is that T. Foley and Mr. DiDaniels were involved in formation of another corporation in 1983 called Catawissa, Inc. which engaged in a shipping business not unlike that of Metro. The testimony of Mr. DiDaniels indicates that during 1985, Metro engaged the services of Catawissa and billed its customers

---

**6.** The trustee does not attempt to maintain an action under 548(a)(2)(B)(ii) or (iii) which apply to transfers made for less than reasonably equivalent value where the debtor (ii) is not properly capitalized or (iii) intended or expected to incur debts which it could not afford to pay.

for those services at a rate lower than that at which it paid Catawissa.[7] (Exhibit C to Memorandum of Interim Trustee in Opposition to Motion for Summary Judgment). From these facts, the trustee argues that the principals of Metro were deliberately operating the business at a loss and transferring its assets to other entities including Catawissa and T. Foley in an attempt to defraud other creditors.

■ The essence of T. Foley's position regarding summary judgment under 548(a)(1) appears to be twofold. First, he argues that since he was never a principal of Metro, he could not have had the control necessary to formulate the requisite intent under 548(a)(1). This argument ignores the fact that under the plain language of 548(a)(1) it is not the transferee's intent which is relevant, but rather the debtor's.[8] It is nevertheless always the transferee who must be sued to recover the transfer. *See e.g. North American Dealer Group.*

T. Foley's second argument appears to be rooted in his belief that the volume of work which he performed as corporate counsel for Metro negates any possibility that Metro's payments to him were made with fraudulent intent. The essence of T. Foley's position apparently is that the consideration he gave was so valuable that his salary could not have been paid by the debtor with intent to hinder or defraud other creditors. This argument has little merit. The value of the consideration he gave has little if any bearing on the intent of the entity which paid him. As stated in *Colliers* ¶ 548.02 at 548–31: "where a conveyance is made with the requisite actual intent, the factor of fair consideration is immaterial."[9]

Viewing the record on this motion for summary judgment "in the light most favorable to the party opposing the motion," *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962), I find that there is significant evidence that the debtor had the requisite intent to hinder, delay or defraud creditors. Deposition testimony of the movant and of a principal of the debtor indicates that the debtor may have been deliberately operating, at least a portion of its business, at a loss at the time at which the transfer was made. Moreover, it may be that one reason for the loss was an extremely unfavorable business arrangement made by the debtor with a connected corporation, (Catawissa), also operated by a principal of the debtor. Additionally the movant here participated in the formation of Catawissa and has at times been employed by it.

Applying the standard of *Celotex* and *Anderson*, the facts presented on this motion lead me to conclude that a jury could reasonably find by clear and convincing evidence, that the debtor through its principals transferred funds to T. Foley with the "intent to hinder, delay or defraud" its other creditors. Consequently summary judgment on the trustee's claims under 548(a)(1) must be denied.

### B. *Section 548(a)(2)*

In order to prevail on his claim under section 548(a)(2), the trustee must establish both that the debtor made the transfer to

---

7. Although the trustee states in its memorandum that T. Foley has a one-third ownership interest in Catawissa, it does not point to anything in the record in support of that assertion. The only involvement of T. Foley in Catawissa which appears of record is his deposition testimony that he participated in some manner in the formation of the company. T. Foley, however, does admit that he has, at least at times, been an employee of Catawissa. (Supplemental Affidavit in Support of Motion for Summary Judgment at ¶ 13(f)).

8. T. Foley's intent might be relevant to a defense under 11 U.S.C. 548(c) which provides:
   (c) Except to the extent that a transfer or obligation voidable under this section is void-

able under section 544, 545, or 547 of this title, a transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation.
The defendant has not, however, raised 548(c) in his answer to the trustee's complaint and has not framed his motion for summary judgment in terms of a defense under 548(c).

9. However, see footnote 8, *supra.*

T. Foley at less than "reasonably equivalent value", 548(a)(2)(A), and that the debtor was insolvent on the date that such transfer was made, 548(a)(2)(B)(i). On motion for summary judgment, T. Foley argues that the trustee can not establish that the transfers were made for less than reaonably equivalent value. In support of his motion, he avers that he spent a minimum of 819.35 hours on "Metro business" in the year proceeding Metro's bankruptcy and that he values this time at $81,935.00. He avers that the legal services rendered constitute more than reasonably equivalent value for the payment of $66,077.00 which the trustee seeks to recover here.

■ While the time records produced by T. Foley do not meet the standards set by the Third Circuit in *In re Meade Land and Development Co., Inc.*, 527 F.2d 280 (3d Cir.1975) for specificity,[10] the trustee nevertheless has not come forward with any evidence in the form of affidavits or otherwise to challenge the accuracy or veracity of the records.[11] Neither does he appear to challenge the value of such time to the debtor. The trustee's failure to make any showing whatsoever in opposition to the time records presented is especially noteworthy in light of the fact that he has been in possession of all of the debtor's legal files since he was appointed.

The trustee instead argues in its memorandum of law that T. Foley's time records in and of themselves cannot be proof of the value of his time. The trustee asks for the opportunity to demonstrate at trial that the services provided by Foley to the debtor did not justify the amount of compensation he received.

Although the question of reasonably equivalent value must generally be resolved as a question of fact, *Klein v. Tabatchnick*, 610 F.2d 1043 (2d Cir.1979), the

existence of a question of fact does not in itself preclude summary judgment. *Celotex.*

As stated above, the trustee has the burden in a proceeding brought under section 548(a)(2) of establishing that the transfer to T. Foley was made for less than reasonably equivalent value by a preponderance of the evidence. *Warner.* In considering this motion for summary judgment, I am obligated to determine whether the trustee has made a showing which could potentially satisfy a trier of fact given this substantive evidentiary standard.

In light of the time records and averments of T. Foley indicating that he spent a substantial number of hours performing his obligations for Metro and the absence of any evidence or affidavit proferred by the trustee in opposition to this motion which would call the value of T. Foley's time into question, I am compelled to grant T. Foley's motion for summary judgment. The trustee has failed to make a sufficient showing on this motion to allow a trier of fact to reasonably determine that the debtor did not receive fair consideration for the transfer made.[12] *Celotex; Anderson. See In re Independent Clearing House. See also, In re North American Dealer Group, Inc.* (work performed for the corporation by a principal can constitute "reasonably equivalent value" for a transfer.)

Thus, T. Foley is entitled to summary judgment in his favor on the trustee's cause of action based upon 11 U.S.C. 548(a)(2).

An appropriate order will be entered.

**10.** The bulk of the entries produced merely attribute time spent to "correspondence" or "review correspondence". The trustee does not appear to challenge T. Foley's averment that such time was actually spent on the services listed.

**11.** Although a small amount of the time listed by T. Foley does not fall within the year preced-

ing Metro's bankruptcy so as to be relevant to the trustee's case under 548(a)(2), the value of such time is negligible and would not affect the outcome of this case.

**12.** The trustee has had more than sufficient opportunity to conduct discovery or prepare counter affidavits making F.R.Civ.P. 56(f) inappropriate.