# United States Court of Appeals
## For the First Circuit

No. 05-2702

IN RE: STANLEY W. JACKSON

Debtor.

VICTOR DAHAR,

Trustee, Appellee,

v.

SUSAN W. JACKSON,
Individually and as Trustee of
SWJ Trust I and SWJ Trust II,

Defendant, Appellant,

STANLEY W. JACKSON, JR.; STANLEY W. JACKSON,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE
[Hon. Joseph A. DiClerico, Jr., U.S. District Judge]

Before
Selya, Lynch, and Lipez, Circuit Judges.

Mary Ann Dempsey, with whom Thomas J. Pappas and Wiggin & Nourie, P.A. were on brief, for appellant.
Richard Thorner, with whom Stephen L. Boyd and Wadleigh, Starr & Peters, P.L.L.C. were on brief, for appellee.

August 18, 2006

**LIPEZ**, <u>**Circuit Judge**</u>. Defendant Susan W. Jackson appeals from the bankruptcy court's judgment setting aside certain property transfers made to her from Stanley W. Jackson, debtor and husband of the defendant, as constructively fraudulent pursuant to the New Hampshire Uniform Fraudulent Transfer Act, N.H. Rev. Stat. Ann. § 545-A:4. Victor Dahar, Chapter 7 trustee, commenced these adversary proceedings against the debtor, the defendant, and their son, Stanley W. Jackson, Jr., in 2002. The bankruptcy court granted summary judgment for Dahar on his claim against the son, voiding a transfer to him of $ 25,000.00. After a four-day trial on the trustee's claims against the debtor and the defendant, the bankruptcy court concluded that certain transfers of property by the debtor to the defendant were constructively fraudulent, and entered a judgment of $ 260,130.67 in favor of Dahar. The defendant appealed to the district court, which affirmed the decision of the bankruptcy court. We also affirm.

## I.

We summarize the facts as follows. At the time of the trial in 2004, the debtor had been in the business of buying and selling real estate for approximately 30 years. On or about August 22, 1990, he executed a term note in the amount of $ 800,000. The note was subsequently assigned to Citizens Bank. The debtor made a payment on the note but then did not make further payments because, he contended, the bank had not fulfilled its

-2-

responsibilities in connection with the note.  Over the next few years, the debtor and the bank fought over the amount owed on the note but no collection proceedings were commenced by Citizens Bank.

On June 3, 1999, the debtor transferred numerous parcels of real property ("subject parcels") to the defendant for no consideration.[1]  Testifying that they made the transfer for estate planning purposes, the debtor and the defendant explained that their estate planning attorney had advised them to equalize their estates and create two trusts, SWJ Trust I and SWJ Trust II, to hold their assets and to obtain the maximum benefit of the federal estate tax marital deduction.  In the eighteen months following the transfer, the defendant sold almost all of the subject parcels.  The proceeds were used to pay the debtor's business and living expenses.  The debtor made no payments to his largest creditor, Citizens Bank, during this time period.

On December 16, 1999, Al Ho, LLC acquired Citizens Bank's note and demanded that the debtor satisfy the balance due. No payments were made and Al Ho foreclosed on the mortgaged properties securing the debtor's obligation.  The foreclosure sale covered only some of the balance owed, leaving a deficiency of $877,129.14, which Al Ho demanded from the debtor on May 25, 2000.  After state court proceedings on the validity of the note, the debtor and Al Ho

---

[1] These parcels, all income-generating properties, represented a substantial portion of all of the property owned by the debtor at the time.

stipulated to an order of judgment in the amount of $931,818.56. The stipulated order barred the debtor from transferring any property or assets from May 29, 2001, until July 13, 2001. A few days before the stipulated order was signed, the debtor transferred to the defendant, for consideration, two mortgage receivables. He transferred his remaining mortgage receivables to the defendant, for consideration, on July 13, 2001. The debtor then filed his bankruptcy petition on October 15, 2001.

On September 26, 2002, Dahar initiated an adversary proceeding against the Jacksons, alleging that the debtor's transfers of the subject parcels and certain mortgage receivables to the defendant were fraudulent. Although rejecting a claim of actual fraud, the bankruptcy court concluded that the transfers of the subject parcels were constructively fraudulent under New Hampshire law.[2] The bankruptcy court found that the value of the subject parcels fraudulently transferred was $ 585,500.00 but awarded Dahar a judgment of $ 260,130.67, which reflected an equitable deduction of the "amount of proceeds utilized to pay business debts of Mr. Jackson and the ordinary and necessary living expenses of his family or $ 365,369.33." The district court affirmed on appeal.

---

[2] The bankruptcy court rejected the trustee's other claim that the debtor's transfer of the mortgage receivables violated 11 U.S.C. § 548.

Dahar brought his complaint under section 544(b) of the Bankruptcy Code, which "allows the avoidance of 'any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law.' Applicable law includes various state fraudulent conveyance statutes, many based on the Uniform Fraudulent Transfer Act [("UFTA")]." See FCC v. Nextwave Personal Commc'ns, Inc. (In re Nextwave Personal Commc'ns, Inc.), 200 F.3d 43, 49 (2d Cir. 1999) (quoting 11 U.S.C. § 544(b)). The applicable law in this case, the New Hampshire UFTA, provides in pertinent part:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (a) With actual intent to hinder, delay, or defraud any creditor of the debtor; or
>
> (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
>> (1) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>>
>> (2) Intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

N.H. Rev. Stat. Ann. § 545-A:4(I). The bankruptcy court found that the transfer here met the elements of § 545-A:4(I)(b)(1). Specifically, the bankruptcy court found that the debtor did not receive "reasonably equivalent value in exchange" for the subject parcels, and that the debtor was engaged "in a business . . . for which the remaining assets of the debtor were unreasonably small in relation to the business." N.H. Rev. Stat. Ann. § 545-A:4(I)(b)(1).[3]

The defendant does not contest the bankruptcy court's first finding -- that the debtor did not receive reasonably equivalent value in exchange for the subject parcels he transferred to the defendant. However, the defendant raises several arguments challenging the bankruptcy court's second finding that the debtor

---

[3] This provision in the UFTA was adopted, with one change, from a provision in the Uniform Fraudulent Conveyance Act ("UFCA"), the UFTA's predecessor. See Peter A. Alces and Luther M. Dorr, Jr., A Critical Analysis of the New Uniform Fraudulent Transfer Act, 1985 U. Ill. L. Rev. 527, 543 (1985) (noting that the drafters of the UFTA incorporated the UFCA's version of this provision, but revised it to refer to unreasonably small "assets" instead of "capital"). This provision permits creditors to prove a fraudulent transfer without proving the debtor's "actual intent" to defraud. See id. at 530-35. The drafters of the UFCA, responding to the difficulty creditors were facing under the "actual intent" standard, included several provisions outlining how creditors could prove constructive fraud. See id. at 532. The drafters adopted these provisions from the evolving case law, in which courts began to shift their fraudulent transfer inquiry from the debtor's intent to whether there had been an "unjust diminution of the estate of the debtor that otherwise would be available to the creditor." Id. This provision, like others in the UFTA, reflects these concerns and the UFTA's overall purpose "to protect the debtor's estate from being depleted to the prejudice of the debtor's unsecured creditors." UFTA § 3, cmt. 2.

was engaged in a business for which his remaining assets were unreasonably small in relation to the business. The defendant also argues that the bankruptcy court applied the wrong standard of proof for establishing constructive fraud under N.H. Rev. Stat. Ann. § 545-A:4(I)(b)(1). In addition, the defendant argues that the bankruptcy court erred in limiting the equitable adjustment it applied to the judgment.

We address these arguments in turn, beginning with the burden issue. We review the bankruptcy court's conclusions of law de novo and its factual findings for clear error. See Davis v. Cox (In re Cox), 356 F.3d 76, 82 (1st Cir. 2004). Although the district court has reviewed the bankruptcy court's decision in this case, we "exhibit no particular deference to the conclusions of . . . the district court." Brandt v. Repco Printers & Lithographics, Inc. (In re HealthCo Int'l), 132 F.3d 104, 107 (1st Cir. 1997).

**A. Standard of proof for establishing constructive fraud pursuant to N.H. Rev. Stat. Ann. § 545-A:4(I)(b)(1)**

N.H. Rev. Stat. Ann. § 545-A:4(I)(b)(1) is silent on the issue of the standard of proof to be applied to constructive fraud claims, and the New Hampshire Supreme Court has not yet addressed this issue. "In the absence of controlling state law, a federal court should choose the rule that it believes the state's highest court is likely to adopt in the future." Amherst Sportswear Co. v.

-7-

McManus, 876 F.2d 1045, 1048 (1st Cir. 1989). The bankruptcy court held that the plaintiff had the burden of establishing constructive fraud by a preponderance of the evidence. The defendant argues that the clear and convincing evidence standard, not the preponderance of the evidence standard, should apply to constructive fraud claims.

In the context of claims involving "actual intent to hinder, delay, or defraud" creditors, the New Hampshire Supreme Court held that the "plaintiff has the burden of proving by clear, convincing and direct evidence the existence of a fraudulent intent." Chagnon Lumber Co. v. DeMulder, 427 A.2d 48, 51 (N.H. 1981). As the bankruptcy court aptly noted, however, this is not a case involving "actual intent to hinder, delay, or defraud" a creditor. This is a case involving constructive fraud. Constructive fraud is generally defined as an "unintentional deception or misrepresentation that causes injury to another." Black's Law Dictionary 686 (8th ed. 2004) (emphasis added). Under the constructive fraud provision in the New Hampshire UFTA, the court is required to assess objective factors, not actual intent. See N.H. Rev. Stat. Ann. § 545-A:4(I)(b)(1) (stating that a transfer is fraudulent if the debtor did not receive "a reasonably equivalent value in exchange for the transfer" and the debtor "[w]as engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were

-8-

unreasonably small in relation to the business or transaction" (emphasis added)). This distinction is important because the stigma that attaches to a finding of intentionally fraudulent conduct does not attach to a finding of constructive fraud. The elements of constructive fraud aim at assessing the injury to the creditor, not the intent of the debtor.

While there is no case law interpreting the standard of proof under the New Hampshire UFTA's constructive fraud provision, we note that bankruptcy courts have applied the preponderance of the evidence standard to a similar constructive fraud provision in the Bankruptcy Code, 11 U.S.C. § 548(a)(2).[4] See Glinka v. Bank of Vt. (In re Kelton Motors, Inc.), 130 B.R. 170, 179 (Bankr. D. Vt. 1991); Armstrong v. Ketterling (In re Anchorage Marina, Inc.), 93 B.R. 686, 691 (Bankr. D.N.D. 1988); Zimmerman v. Saviello (In re Metro Shippers, Inc.), 78 B.R. 747, 751 (Bankr. D. Pa. 1987); Talbot v. Warner (In re Warner), 65 B.R. 512, 519 (Bankr. S.D. Ohio 1986). As one court explained, the preponderance of the evidence standard is appropriate for demonstrating constructive fraud under 11 U.S.C. § 548(a)(2) because

> (1) the judicially created presumption [of
> fraud] under § 548(a)(2) no longer requires a
> moving party to prove actual intent to defraud
> creditors; (2) the purpose of enacting

---

[4]  11 U.S.C. § 548(a)(2) mirrors the requirements of N.H. Rev. Stat. Ann. § 545-A:4(I)(b)(1), but refers to unreasonably small "capital" instead of "assets."

-9-

> § 548(a)(2) was to remove the difficulty of proving fraud and to give effect to the policy of the Bankruptcy Code; and, (3) an action brought under § 548(a)(2) is civil in nature: i.e., it involves no penalty or any other policy consideration that requires a heightened standard of proof.

In re Kelton Motors, Inc., 130 B.R. at 179.

Under similar reasoning, the Supreme Court, in interpreting a different fraud provision in the Bankruptcy Code, has held that a preponderance of the evidence standard applies. See Grogan v. Garner, 498 U.S. 279 (1991) (assessing standard of proof under 11 U.S.C. § 523(a), which provides a fraud exception to discharge). The Court noted that, "[b]ecause the preponderance-of-the-evidence standard results in a roughly equal allocation of the risk of error between litigants, we presume that this standard is applicable in civil actions between private litigants unless 'particularly important individual interests or rights are at stake.'" Id. at 286 (quoting Herman & MacLean v. Huddleston, 459 U.S. 375, 389-90 (1983)). Applying that reasoning to the Bankruptcy Code provision, the Court observed that

> it [is] unlikely that Congress, in fashioning the standard of proof that governs the applicability of these provisions, would have favored the interest in giving perpetrators of fraud a fresh start over the interest in protecting victims of fraud. Requiring the creditor to establish by a preponderance of the evidence that his claim is not dischargeable reflects a fair balance between these conflicting interests.

-10-

Id. at 287.

This same reasoning holds true for the New Hampshire UFTA's constructive fraud provision. In New Hampshire civil cases, the plaintiff generally has the burden of proving his or her case by a preponderance of the evidence. See Hancock v. R.A. Earnhardt Textile Mach. Div., 653 A.2d 558, 559 (N.H. 1995). A case involving constructive fraud under N.H. Rev. Stat. Ann. § 545-A:4(I)(b)(1) requires only an inquiry into objective factors. No penalty results from a finding of constructive fraud; rather, the debtor is required only to pay a judgment "equal to the value of the asset at the time of the transfer." N.H. Rev. Stat. Ann. § 545-A:8(III). The stigma attached to actual intent cases is not present here. Thus, there is no justification for a heightened burden of proof in constructive fraud cases under this provision in New Hampshire law.[5] We therefore agree with the bankruptcy court's reasoning that the New Hampshire Supreme Court would apply the preponderance of the evidence standard to constructive fraud cases.

_____

[5] To the extent that some courts have held that a plaintiff must prove constructive fraud by clear and convincing evidence, these courts seem to have relied on cases that adopted the heightened standard applicable to actual intent cases without addressing the differences between the inquiries in constructive fraud and actual intent cases, see, e.g., Territorial Savings & Loan Ass'n v. Baird, 781 P.2d 452, 458 (Utah App. Ct. 1989), or were interpreting state law that holds that any case involving fraud requires a heightened standard of proof, see Nastro v. D'Onogrio, 263 F. Supp. 2d 446 (D. Conn. 2003) (citing Gaudio v. Gaudio, 580 A.2d 1212, 1223-24 (Conn. App. Ct. 1990)). The cases also fail to contend with the Supreme Court's reasoning in Grogan. We therefore decline to apply the rule of those cases here.

-11-

Cf. Word Invs., Inc. v. Bruinsma (In re TML, Inc.), 291 B.R. 400, 436-37 (Bankr. W.D. Mich. 2003) (applying a similar analysis in determining that, under the constructive fraud provision in the Michigan UFCA, the Michigan Supreme Court would apply the preponderance of the evidence standard).

## B. Whether the debtor was engaged in a business for which his remaining assets were unreasonably small in relation to the business

Under the New Hampshire UFTA, Dahar had to demonstrate that the debtor "[w]as engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction." N.H. Rev. Stat. Ann. § 545-A:4(I)(b)(1). This requirement in fraudulent transfer law generally calls for a court to "examine the ability of the debtor to generate enough cash from operations and sales of assets to pay its debts and remain financially stable" after a transfer. Pioneer Home Builders, Inc. v. Int'l Bank of Commerce (In re Pioneer Home Builders, Inc.), 147 B.R. 889, 894 (Bankr. W.D. Tex. 1992) (quoting Yoder v. T.E.L. Leasing, Inc. (In re Suburban Motor Freight, Inc.), 124 B.R. 984, 999 (Bankr. S.D. Ohio 1990)) (internal quotation marks omitted); see also Vadnais Lumber Supply, Inc. v. Byrne (In re Vadnais Lumber Supply, Inc.), 100 B.R. 127, 137 (Bankr. D. Mass. 1989) (holding that, under the parallel "unreasonably small capital" provision in 11 U.S.C. § 548, courts must assess "the ability of the debtor to generate enough

-12-

cash from operations or asset sales to pay its debts and still sustain itself" after a transfer). This requirement in fraudulent transfer law does not require a finding of post-transfer insolvency; it instead "encompasses difficulties which are short of insolvency in any sense but are likely to lead to insolvency at some time in the future." In re Vadnais Lumber Supply, Inc., 100 B.R. at 137; see also Moody v. Sec. Pac. Business Credit, 971 F.2d 1056, 1070 (3d Cir. 1992) ("[U]nreasonably small capital denotes a financial condition short of equitable insolvency.").

The defendant argues that the bankruptcy court committed several errors in its approach and its findings under this provision of the New Hampshire UFTA. We consider and reject the defendant's arguments.

**1. Whether the bankruptcy court failed to consider personal assets in evaluating the debtor's "remaining assets"**

The defendant argues that the bankruptcy court erred by interpreting the term "remaining assets" in N.H. Rev. Stat. Ann. § 545-A:4(I)(b)(1) to exclude personal assets and thus failed to consider the debtor's personal assets when determining the extent of his "remaining assets" after the transfer. The applicable definition of "asset" under New Hampshire law does not distinguish between personal and business assets. See N.H. Rev. Stat. Ann. § 545-A:1. If the bankruptcy court had considered the debtor's personal assets, the defendant argues, it would have concluded that

-13-

the debtor's business and personal assets were enough to cover the debtor's debts and keep him financially stable.

The defendant's argument reflects a misunderstanding of the bankruptcy court's analysis. The bankruptcy court did not interpret the statute to exclude personal assets. While the bankruptcy court did not calculate the precise value of the debtor's personal assets, it did consider the impact of the debtor's personal assets on the "remaining assets" inquiry. Specifically, the court acknowledged that "the Debtor had significant equity in his residence, as well as other assets," but observed that "all of the property transferred to the Defendant as part of the estate-planning transfers were business assets" and it was from these business assets that the debtor intended "to derive income, pay his business debts, and support his family." Indeed, the bankruptcy court found that there was no evidence "as to how the Debtor could pay his business debts and support himself and his family without continuing to engage in the business of selling his real estate inventory." The defendant herself asserted in her trial brief to the bankruptcy court that "the uncontroverted evidence [is] that during this period Stanley Jackson generated no new income, the Jacksons needed to sell property to pay expenses, including living expenses, and that the properties were accumulated [by the Jacksons] to do so."

Thus, there was no error in the bankruptcy court's analysis of the "remaining assets." Even considering the debtor's personal assets (which, the trustee argues, were not easily liquidated), the debtor could not "generate enough cash . . . to pay [his] debts and remain financially stable" after the transfer. In re Pioneer Home Builders, Inc., 147 B.R. at 894 (quoting In re Suburban Motor Freight, Inc., 124 B.R. at 999) (internal quotation marks omitted).[6] As we discuss in more detail below, this finding is supported by the defendant's own assertions at trial and the fact that, after the transfer, payment of the debtor's debts and his family's personal expenses came from the defendant's sale of the properties transferred.

---

[6] In his brief, the trustee suggests that most of the property held personally by the debtor was encumbered, exempt, or jointly held and not subject to creditors' claims, and thus not "assets" within the meaning of New Hampshire fraudulent transfer law. See N.H. Rev. Stat. Ann. § 545-A:1 (defining "asset" as "property of a debtor, but the term does not include: (a) Property to the extent it is encumbered by a valid lien; (b) Property to the extent it is generally exempt under nonbankruptcy law; or (c) An interest in property held in tenancy by the entireties to the extent it is not subject to process by a creditor holding a claim against only one tenant"). The bankruptcy court did not make any findings on this specific issue, and instead recognized that the property held by the debtor did not generate enough income to help him remain financially stable. Because that finding is not clearly erroneous, we do not delve into the issue of whether the debtor's personal assets could be considered "assets" under New Hampshire fraudulent transfer law.

**2. Whether the bankruptcy court erred in finding the debtor's remaining assets "unreasonably small" in relation to the business**

The defendant argues that the bankruptcy court erred in finding that the debtor's remaining assets were "unreasonably small" in relation to his business. This argument is premised primarily upon the defendant's argument that the court had failed to account for the debtor's personal assets in calculating his remaining assets. We have already rejected that argument. The bankruptcy court considered all of the debtor's remaining assets and did not clearly err in determining that they were "unreasonably small" in relation to his business.

This conclusion is borne out by the evidence of how the debtor attempted to pay his business debts and living expenses after the transfer of the majority of his income-generating properties to the defendant. The bankruptcy court found that, after the transfer, the debtor had negative equity in his remaining business assets. The defendant began selling the subject parcels and used the majority of those proceeds to pay the debtor's business debts and their joint living expenses, which, prior to the transfer, had been paid by the debtor's business income.[7] The sale

---

[7] The defendant argues that the bankruptcy court erred in considering, as part of its "unreasonably small" assets analysis, whether the debtor had sufficient assets to support his family's living expenses. The defendant argues that the amount of assets should be measured only "in relation to the business or transaction," not the debtor's family obligations.

-16-

of the majority of the subject parcels to pay debts and living expenses defeated the estate planning purpose of the transfer (to equalize the estates of the debtor and the defendant by shifting assets to the defendant) and indicates that the debtor was unable to generate enough cash from his own remaining assets to "remain financially stable." In re Pioneer Home Builders, Inc., 147 B.R. at 894. The defendant herself asserted that she needed to sell the properties in order to pay the debtor's debts and expenses. In light of these facts, the defendant has not established that the bankruptcy court clearly erred in finding that the debtor's assets were "unreasonably small" in relation to his business under N.H. Rev. Stat. Ann. 545-A:4(I)(b)(1), despite his retention of certain personal assets.

---

Assuming for argument's sake that this argument has been preserved, it leads the defendant nowhere. The bankruptcy court found that the debtor had to rely on the defendant's sale of the subject parcels to meet his business debts as well as his living expenses. Taking living expenses out of the equation does not change the fact that the debtor had to rely on the proceeds of the post-transfer sales to pay his business debts. Moreover, the defendant fails to explain why consideration of this issue was inappropriate in the context of this case. The fact that the debtor had to use the proceeds of the post-transfer sales to pay his living expenses in addition to his business debts only further demonstrates his lack of financial stability following the transfers. We see no error here.

**3. Whether the bankruptcy court erred in finding that the debtor was "engaged or was about to engage in a business" when he transferred the properties**

The defendant argues that the bankruptcy court clearly erred in finding that the debtor was still engaged in the real estate business at the time of the transfers. The defendant asserts that the debtor had retired from the real estate business due to his failing health, particularly following a hip surgery that lead to numerous medical complications. The bankruptcy court considered this argument, but noted that the debtor had been engaged in his real estate business for thirty years, and that, despite his health problems, he continued to sell properties in the months immediately preceding the transfers of the subject parcels in June 1999. The bankruptcy court noted that this same practice of selling properties continued after the transfers, albeit under the defendant's name. Indeed, the defendant testified at trial that she and the debtor had accumulated the properties over the years in order to sell them, and that was how they earned their living. In light of those facts, the bankruptcy court did not clearly err in finding that the debtor had no intentions of retiring or otherwise ceasing his business activities immediately following the transfers.[8]

---

[8] Having so concluded, we also reject the defendant's argument that the bankruptcy court should have assessed the debtor's remaining assets only in relation to the financial needs associated with selling the subject parcels after the transfers. The "business" in

-18-

## C.  Equitable adjustment

Under New Hampshire law, the judgment for a fraudulent transfer "must be for an amount equal to the value of the asset at the time of the transfer, <u>subject to adjustments as the equities may require</u>."  N.H. Rev. Stat. Ann. 545-A:8(III) (emphasis added).  The bankruptcy court calculated the value of the subject parcels to be $ 585,000.00.  The bankruptcy court then adjusted that amount by $ 325,369.33, crediting the defendant "for the expenditures she made, that the Debtor could have made without objection [if he had not transferred the properties], during the [one-year period that] the business was winding down."  The bankruptcy court explained:

> In this case, the Defendant used some of the proceeds from the sale of Subject Parcels to pay the Debtor's business expenses and the family expenses the Debtor had been solely responsible for covering for the prior two decades.  This use of the proceeds for those specific purposes was the basis for the Court's finding that the transfer was constructively fraudulent.  Furthermore, the Plaintiff has not challenged the reasonableness or necessity of these payments.  Therefore, in the absence of any finding of actual fraud, it would be a windfall to the estate to allow the Plaintiff full recovery of

---

question is the debtor's real estate business as a whole, and the bankruptcy court had to assess the debtor's ability, after the transfer, to cover the debts and expenses of that business (not just the debts and expenses that may or may not have been associated with the defendant's sale of the subject parcels) with his remaining assets.  The evidence demonstrates that the debtor was not able to cover those debts and expenses and relied instead upon the income generated from the defendant's sale of the properties transferred to her.

> all the proceeds from the sale of the Subject
> Parcels without making an equitable adjustment
> to account for the proceeds the Defendant used
> to pay the Debtor's bills and cover the family
> expenses. Accordingly, the Court determines
> that it is equitable under the facts of this
> case to credit the Defendant for the
> expenditures she made that the Debtor could
> have legitimately made if the constructively
> fraudulent transfers had not occurred.

Neither party challenges the bankruptcy court's decision to adjust the judgment in this case. However, the defendant challenges the one-year limitation on the adjustment, arguing that she continued to pay for expenditures on the debtor's behalf after that period and thus is deserving of a larger adjustment.[9] We review the bankruptcy court's limitation on the equitable adjustment for abuse of discretion and its underlying factual findings for clear error. See United States v. Verduchi, 434 F.3d 17, 25 (1st Cir. 2006) (stating that equitable determinations made in the context of

---

[9] The defendant also argues that she should have received an additional $30,000.00 as an equitable credit for the sale of a lot that the debtor had transferred to her. The defendant sold the property, receiving $ 3,540.50 in net proceeds and an $80,000.00 mortgage receivable. She then transferred the mortgage receivable to the debtor for no consideration, and then bought it back from him for $30,000.00. The bankruptcy court rejected her request for a $30,000.00 credit, finding that she misunderstood the purpose of the equitable adjustment it had applied. The court found that equity in this case required only that the defendant be credited for expenditures that she made, which the debtor could have made without objection if he had kept the properties, during the time the business was winding down. The court found no reason to credit the defendant for her decision to shuffle money and property to and from the debtor in relation to the transaction in question. We see no reason to overturn that finding.

fraudulent transfer judgments "are clearly committed to the trial court's discretion and are reviewed only for abuse of discretion"); In re Cox, 356 F.3d at 82 (noting that a bankruptcy court's factual findings are reviewed for clear error).

New Hampshire law does not specify how an equitable adjustment in this context should be calculated. The bankruptcy court noted that, "[i]n many cases, determining the precise amount of . . . an adjustment may be difficult if not impossible. In such cases, the Court must inevitably engage in an element of rough justice." That task of determining the extent of equitable adjustment in this case was made even more difficult by the voluminous and disorganized materials presented by the parties.[10] Nevertheless, the court carefully examined the record and determined that a one-year period of adjustment was appropriate. The court found that, after a one-year period,

> sales of the Parcels occurred at significantly longer intervals. This evidence indicated to the Court that the liquidation of the business assets was effectively completed and that the remaining parcels had been effectively

---

[10] In fact, in its decision, the bankruptcy court noted that "the evidence for this case was voluminous, often redundant, and frequently contradictory. The quantity and organization of the evidence also confused the parties and their respective counsel. Charts and graphs submitted by the parties . . . were found to contain material errors or omissions. . . . [I]t was necessary for the Court to devote considerable time and effort to verify and correct the charts and exhibits submitted as evidence or argument by the parties." Our review of the record confirms the accuracy of the court's assessment.

> converted to personal assets. Once the remaining parcels were converted to personal assets of the Defendant, the equitable basis for any adjustment ceased to exist.

In other words, because the dispute in this case focused on the diminution in value of the debtor's real estate business because of the property transfers to the defendant, the court found that once the business activities stopped, there was no longer any equitable basis for adjusting the judgment. The defendant has not given us any reason to reject either the court's rationale or its factual findings. We therefore affirm the equitable adjustment.

## III.

The bankruptcy court properly concluded that the debtor transferred property to the defendant in violation of the New Hampshire UFTA's constructive fraud provision, N.H. Rev. Stat. Ann. § 545-A:4. The bankruptcy court applied the correct burden of proof and we discern no error in its calculation of the equitable adjustment. The district court correctly upheld the decision.

Affirmed.